UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                       22 Cr. 343 (JMF)

        vs.

TYSHAWN BROGDON ET AL,

        Defendants.
_____

**DEFENDANT TYSHAWN BROGDON'S SENTENCE MEMORANDUM**

Law Office of Evan L. Lipton, P.C.
260 Madison Avenue, Floor 22
New York, New York 10016
(917) 924-9800
ell@evanliptonlaw.com
Attorney for Tyshawn Brogdon

**I.      Tyshawn Brogdon should be sentenced to sixty-one months.**

Tyshawn Brogdon plead guilty to counts one and seventeen of the superseding indictment pursuant to a plea agreement. He faces mandatory minimum of 60 months incarceration on count seventeen, which must be served consecutive to any sentence imposed on count one. Counsel respectfully submits that a sentence of 61 months incarceration is "sufficient but not greater than necessary" to promote the purposes of federal sentencing. *See* 18 USC § 3553. This is a request for a non-guidelines sentence. *See* PSR ¶ 179 ("The defendant's difficult upbringing and substance use issues may warrant a sentence outside of the advisory guideline system.")

Tyshawn was arrested in this case on December 15, 2022, three months after his nineteenth birthday. He turned twenty-one this year at the MDC. The conduct for which Tyshawn is being held accountable occurred when he was between fifteen (which is when he first engaged in the credit card fraud charged in count twenty-three) and eighteen years old (he allocuted to involvement in two robberies, one when he was seventeen[1], the other when he was eighteen[2]). All of the charged conduct was committed as part of "WashSide", the enterprise charged in count one. "WashSide" is what Tyshawn and his sixth-grade friends from J.H.S. 145 called their group of friends, referring to Washington Avenue, location of the Morris NYCHA development. Tyshawn was arrested with members of this group when he was thirteen, for stealing an iPhone; when he was fifteen, after he was found with fraudulent debit cards; and when he was eighteen, for the carjacking charged in count fifteen, which was resolved with a plea to criminal mischief. *See* PSR ¶ 128; New York Penal Law § 145.

From the time of that last arrest, on September 27, 2021, until the federal government arrived at his door eighteen months later Tyshawn was under court supervision, and then probation, on his way to earning youthful offender status. He had a job working in a supermarket and was compliant with all his conditions. He never got to pick up his last check because of his arrest in this case. He might have succeeded had he been given the chance.

---

[1] The pawn shop robbery charged in count twelve occurred on June 27, 2020. Brogdon was not named in this count.
[2] The September 27, 2021, carjacking charged in count fifteen.

Tyshawn accepts responsibility for his conduct in connection with the enterprise charged in count one. His plea in this case is broader and covers more conduct than the cases adjudicated in the Bronx: specifically, the pawn shop robbery (which he wasn't charged with in this case because it occurred when he was seventeen years old) and the wire fraud charged in count twenty-three, which encompasses substantially more activity than the debit cards he was arrested with at fifteen. The federal charges further address his possession of a firearm, which was concealed in a backpack during the carjacking (PSR ¶ 68), and aiding and abetting possession of a firearm brandished by another person during the pawn shop robbery. PSR ¶ 52. These are serious offenses that caused real harm to victims. Nothing in this memorandum is intended to detract from this. A 61-month sentence is also serious, especially when imposed on a young person like Tyshawn, and even more so when a portion of the sentence is served in the deplorable conditions at the MDC.

While Tyshawn has a juvenile record, he has never faced anything like the punishment he is now experiencing. He was never sent to Rikers Island or even held in central booking overnight. A 61-month federal sentence is a big step up from any previously imposed punishment and will have the intended deterrent effect. Tyshawn was a teenager when he committed these crimes. The government will undoubtedly argue that he was given his chance when he his teenage arrests were adjudicated through the youthful offender system, and that he was resistant to the programming offered to him. But he deserves a chance to prove himself as an adult, to show that this horrible experience of federal incarceration has had an impact on him. He should be given that opportunity on supervised release as soon as possible under the terms of his plea.

A 61-month sentence would also appropriately reflect Tyshawn's relative culpability compared to the others charged in the Indictment, several of whom have been sentenced. He was not part of the cross-country "campaign of pillaging" that hit commercial establishments "throughout the Northeast, Mid-Atlantic, South and Midwest." *See* PSR ¶ 40. (Tyshawn has only left New York State twice – both times on family trips to Washington D.C. with his mother.) He didn't sell controlled substances. Id. He didn't shoot at anyone or come along while anyone else shot at someone. He didn't brandish a weapon against another

2

person. He isn't alleged to be part of other street gangs, like the "Bloodhound Brims" a particular "set of the Bloodsinvolved in extensive criminal activity throughout the metropolitan area" as the government claims about other charged defendants. *See* D.E. 247, government sentencing letter, defendant Mamadou Diallo, filed 5/24/24, p. 3, fn. 1. He's charged in fewer counts than others, is less culpable than others and should receive the lowest, or near lowest sentence of any of the defendants charged.

The Court should consider that the escalation of Tyshawn's criminal conduct, from credit card scammer to participant in two robberies, occurred during the pandemic, when the structure that existed in Tyshawn's life dropped out. The government has pointed out the cynicism embodied in some defendants' decision to take advantage of the pandemic to commit crimes. *See* D.E. 247, p. 8 ("the collective guard of their victims was down" and "law enforcement was preoccupied and limited in its ability to respond."). That may be true, but it is equally true that society failed these kids. It failed them before the pandemic by not providing the resources necessary to run the schools they are sent to, by allowing guns and drugs to flood into their neighborhood, by glorifying crime and violence, and by ignoring the mental health crisis that ensued. The fact that these troubled teenagers reacted as they did when the world came to a sudden halt should be no surprise at all. It is not indicative of an inability to reform, or even a good predictor of how they will act as adults. This is precisely the logic behind the amendment to USSG § 5H1.1("age may be relevant in determining whether a departure is warranted...youthful individuals generally are more impulsive, risk seeking, and susceptible to outside influence as their brains continue to develop... youthful individuals also are amenable to rehabilitation.") This logic is equally applicable to a non-guidelines sentence.

Tyshawn has very strong relationships with his mother and his siblings. As detailed below, he comes from a good family of working New Yorkers. He is thoughtful and hopeful for the future. He was happy going to work every day in the months before his arrest and can picture himself back at the supermarket. He is amenable to rehabilitation. He is not a sociopath who can't be reformed. He is a young person who needs to grow up, who needs a chance to be an adult. The Court should give him that chance by sentencing him to the

3

shortest period of incarceration possible and showing him that despite how it may feel sitting in the deplorable conditions of the MDC (where they recently put screens over the windows that obstruct the tiny bit of New York Harbor he was able to gaze at from him his cell) society has not given up on hm.  The lengthy sentence the government is expected to advocate for would have precisely the opposite effect.

## II.     Tyshawn Brogdon's Personal History and Characteristics

Tyshawn Brogdon was born on September 27, 2002, in the Bronx, in a neighborhood located in the 15th Congressional District, the poorest in the country. (Just across the East River from the nation's richest, the 12th District.)  He is the only child of Thomas Brogdon and Sandra Chavis. He lives with his mother, his older sister Tysandra (23 years old) and his younger sister Tynise (19 years old) in an apartment on Longfellow Avenue. His mother used to work in food preparation but has been home with an ankle injury for several months. Tysandra is a security guard and Tynise, a new mother, is a student. He has four maternal half-brothers who reside a few miles away in the Morrisania section of the Bronx. Jeffrey, 32 years old, works for Amazon delivering packages. Hakeem, 27 years old, is lead warehouse associate for the East Side Settlement where he delivers food for the "Meals on Wheels" program. Darell, 25, is training to be a firefighter. Tyshawn sees his brothers regularly when they stop by his mother's apartment. He is very close with everyone in his family but has an especially close bond with his mother. Her name is tattooed in large cursive writing across his forearm.

As far as Tyshawn can recall, his parents always lived separately. When he was younger, he would visit his father every weekend, usually at an apartment where he rented a room.  It wasn't until he few years ago that his father got his own place. Tyshawn doesn't know whether he had a job but thinks that he worked in a warehouse at some point. When he spent time with his father they would walk around outside, go to the store, or visit in the apartment he lived in. Tyshawn's mother took care of him. She bought him the clothes that he wanted and made sure that the family was always well fed. During the presentence interview Tyshawn described his relationship with his mother as "good" and "special."

When Tyshawn was about twelve years old, he recalls having a moment of revelation about his father. He had asked his mother to buy him some shoes and his mother told him to ask his father in front of her when he came over to the apartment. When Tyshawn asked him for the shoes he said no, because he didn't have any money. But then Tyshawn found out that he went and bought his other kids shoes the same day. Tyshawn stopped going to see him on weekends: "He'd ask 'what are you doing this weekend?' I'd be aight, and never show up." He did not have a relationship with his father for several years, but recalls it starting to change a few years ago after his father put together a memorial for his grandmother, and then got all of the siblings together for Thanksgiving, the latter just a few weeks before Tyshawn was arrested in this case.

The first home that Tyshawn remembers was an apartment in a house in Hunts Point. Tyshawn and his sisters attended P.S. 48 from kindergarten through fifth grade. He remembers it as a "good school" and a "good environment" where he would play basketball ("I was on some playing ball," in his Gen Z slang.) When his older sister moved on to the middle school across the street she would walk her younger siblings home each day, where their mother would meet them when she was done with work. When Tyshawn was in fifth grade they had to move because "the house was falling apart, and the landlord wouldn't fix it." They moved to an apartment on 167th Street, near the Grand Concourse. For the first year Tyshawn commuted to his old school. When he completed fifth grade he enrolled in the local junior high, J.H.S. 145, to begin sixth grade, where he became friends with several of his co-defendants.

When asked when he joined WashSide, Tyshawn explains, "it wasn't really joining, just people that grew up together and made bad decisions." The name referred to the area where most of the members lived. In Tyshawn's recollection, WashSide "came out" in 2015, when Tyhawn was thirteen, after the death of an older kid from the neighborhood whose friends called him "Day Day." *See* PSR ¶ 38 (noting the 2015 death of Desean Ferarri in an accident). Day Day died from a rooftop fall. Tyshawn and his friends believed he had been pushed. In an expression of their teenage grief, Day Day's memory became something that the group further coalesced around. This all occurred as social media became pervasive as means of

5

communication for teenagers. Tyshawn named his Instagram account after his dead friend. He remembers people posting things that made fun of Day Day's death and how angry it made him feel.

Tyshawn attended all of sixth grade. In seventh grade he stopped engaging and started skipping school. It would take a few days for the phone calls from the attendance office to catch up to his mother. He would get grounded for a while and then repeat the process. He stayed with his half-brothers who lived near Grand Concourse over the summer and was "on Wash every day." He was arrested for the first time that July, along with one of his co-defendants in this case, accused of stealing a phone. *See* PSR ¶ 125. Two months later, just after his fourteenth birthday (and while the first case was still pending) he was arrested again for a stolen iPhone and was found with three stolen debit cards. Id. ¶ 126. He was arrested a third time in 2017 for robbery. Id. ¶ 127. All of these cases were sent to Bronx Family Court because Tyshawn was still seventeen years old. Each time he was arrested he was sent to Horizon Juvenile Center where he was detained until being sentenced to "non-secure placement" which Tyshawn describes as "regular houses with bars on the windows" where he would leave each day to attend school with kids from other non-secure placement houses. After school he would attend group therapy. The longest period Tyshawn spent in the detention center was about two months. He was in "non-secure placement" for a total of about twelve months.

These programs did not help Tyshawn develop the skills he needed to succeed. He was placed in group therapy programs were all the participants were compelled to be there, just like he was. The behavior of some of the people running the programs made him even more cynical of the entire process. He recalls a youth mentor who was assigned by the probation department coming over for a home visit and leering at his sisters. A few days later the "mentor" was caught in a sexual act with a teenage program participant. Tyshawn smoked a blunt for the first time at Horizon Juvenile Center, beginning an every-day habit that continued until his arrest in this case.

Tyshawn finished 9th grade in non-secure placement and was released home in February 2020, when he was seventeen years old. He enrolled in tenth grade at Frederick Douglas High

6

School in Harlem. He began to attend classes, waking up each day at 7:00 a.m. to get there on time. Then COVID happened. School closed. Tyshawn was issued a tablet and a remote school schedule. It did not provide the same motivation as having to arrive at school before the morning bell. He found it hard to follow the teachers who didn't have the technological capacity to stop other students from messing around in the group classroom. His mom woke him up before she left for work in the morning, just like when he would go to school, but he would fall asleep on the computer. For a while he did the classwork and sent it in. Then he went back to hanging out with his friends in WashSide.

### III.     The nature and circumstances of the offense.

Tyshawn plead guilty to count one, racketeering, in violation of 18 USC §. 1962(d), and count seventeen, using and carrying a firearm and aiding and abetting the same, in violation of 18 USC §§ 924(c)(1)(A)(i) and 2. He allocuted to participating in the robbery of a pawn shop on June 27, 2020, as charged in count twelve, and the September 17, 2021, carjacking charged in count fifteen, both of which form the basis for count seventeen. He also admitted to participation in the wire fraud charged in count twenty-one, and that all three acts were done in furtherance of the enterprise charged in count one.

Without detracting from the seriousness of the offense conduct, there are mitigating factors specific to Tyshawn's participation that make him less culpable than a typical defendant engaged in the same conduct:

- In connection with Tyshawn's use of a firearm and the associated conduct, Tyshawn did not display a firearm during the carjacking. The firearm was concealed in a backpack that he was carrying and was later seized from his co-defendant. (Ballistic testing tied the gun to shootings charged against the co-defendant.) He did not personally carry the firearm during the pawn shop robbery, but aided and abetted a co-defendant's use of a firearm. He acted primarily as a lookout and was a minor (seventeen) at the time. He was the second youngest of the group of four participants.

7

- In connection with count one and the conduct of the enterprise generally, Tyshawn was not involved with many of the purposes of the enterprise specified in the superseding indictment. See PSR ¶ 41. He is not implicated in drug trafficking or engaging in acts of violence ("opps") against rival gangs.

### IV. The Court should exercise its discretion to impose a non-guidelines sentence.

The Probation Department determined a different advisory guidelines range (123 months at the low end) than contained in the plea agreement (147 months). Both are too high — many years "greater than necessary" to fulfill the mandate of section 3553. The primary driver is that when a sentence is required to run consecutive to another sentence imposed, the guidelines add the mandatory sentence to the low end of the guideline for the other sentence. The difference between the two calculations is because the plea agreement treats all of Tyshawn's prior convictions as part of the enterprise in count one, which results in a higher offense level (29 as opposed to 24), but a lower criminal history category (one instead of three).

### V. A 61-month sentence is "sufficient but not greater than necessary" to provide adequate deterrence while also providing Tyshawn with motivation to succeed in his rehabilitation and preparation to live a law-abiding life.

Tyshawn's time in the MDC has been hard. He is stoic and soft spoken, but also clearly consumed with anxiety and regret about his situation, and the prospect of being locked up for many more years. The minimum sentence that he hopes for amounts to twenty-five percent of the time he has been alive. The numbers he sees in the guidelines are more than he can wrap his head around. More than anything, he wants a chance to prove himself, to show that at twenty-one years old he can reflect on the things he did at eighteen (and before) and see that they were wrong. He wants to show the Court and his family that he gets the message, and he is ready to move forward with his life. He is frustrated that he was arrested when he was working for the first time – he liked working in warehouse and the routine of working until he was tired, going home, sleeping and repeating. He thought that the people

he worked for (Hasidic Jews in Borough Park) were "really cool and respectful" and appreciated his work. He had a good relationship with them and thinks he could work there again when he gets out.

Tyshawn intended to write a letter to include with this submission, and the Court granted a one-day extension to allow defense counsel to meet with him at the jail for that purpose. I woke up early this morning and saw a New York Times article reporting that an inmate was killed at the facility yesterday. When I visited with him, he didn't have the letter. He reported that he was writing it out by hand in the law library yesterday afternoon when there was a "recall" directing the detainees to return to their cells, leaving anything they were working on behind. When the "recall" turned into a lockdown an officer told him that everything on the tables had been thrown out. Tyshawn thinks the death yesterday happened because there aren't enough guards, and they just stay in the "bubble" control room. "If they were paying attention they would have known and could have stopped it. You can tell when stuff about to happen in jail."

Instead of a letter, Tyshawn and I had a conversation about what he would like to express to the Court, which I told him I would include here. Tyshawn apologizes to the victims of his crimes, specifically the man who worked at the auto shop who was injured when he took the car that was parked out front, and the people who were working at the pawn shop. He says that he wasn't thinking of their feelings at the time. If he could speak with them, he would "apologize and tell them I accept the consequences. I was wrong for going into that lot and taking that car. I could have hurt people worse. I destroyed the car they had just fixed. I regret doing that to him. I was only thinking of myself." He says that "me and the person you're talking about, we don't got the same mentality anymore, I've seen the consequences and it's made me wiser." Although he was not involved in the death of Pedro Almodovar, he apologizes to his family for posting about the murder on Instagram.

Each time there is another lockdown the jail hands out a memo. When Tyshawn gets the memo, he knows it will be another thirty days. There was a lockdown when there was a stabbing death on another floor, and when someone burned a hole in a window on his floor. Even though that occurred in another unit, the entire floor was locked down. Now they are

9

putting metal gates over the windows. Before he was able to see some dirt, some cars in a parking lot, a warehouse and a little bit of water and boats. He could see the colors of the sunset. "In here we don't see outside from rec yard can't see nothing." He constantly feels "stressed." Because of the lock downs he can't talk to his family and can't get any new books. He has started dreaming about being in jail as if the "real world" no longer even exists. These dreams make him even more determined to succeed when he is released.

He is reflective: "I know what I did is wrong. I'm not asking you to look past it. I'm asking for one more chance to reunite with my family. I am more mature. Sitting down at the MDC made me see things a different way than when I was at home. I know now that I didn't have to do it. I need to learn to think before I act. I did family therapy in juvenile and they talked about impulse control. But I didn't really get it. Now I'm just thinking and not just reacting. A couple days ago unit was about to go off. My thinking was like, they arguing, feel me, I'm not gonna go to the box over something that not about me, I'm gonna just sit down and watch. In my old state of mind I would have been in it."

## VI.  Conclusion

For the reasons discussed in this memorandum, the Court should impose a sixty-month, non-guidelines sentence.

Dated: July 18, 2024
New York, New York

Respectfully submitted,

Evan L. Lipton
Law Office of Evan L. Lipton, P.C.
*Attorney for Tyshawn Brogdon*
